UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DARIUS SIMS,

                    Plaintiff,

v.

DR. R. WALKER, et al.,

                    Defendants.

Case No.: 17-cv-00722-CAB-JLB

**REPORT AND RECOMMENDATION**

**[ECF No. 15]**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (ECF No. 15.) Plaintiff Darius Sims brings this action under the Civil Rights Act, 42 U.S.C. § 1983 for the medical care he received while incarcerated at Richard J. Donovan Correctional Facility ("RJDCF"). (ECF No. 1 at 3–6.)[1] In his complaint, Plaintiff names as defendants Drs. Walker, Chau, Clayton, Barenchi, and Correctional Officer Strayhorn. (*Id.*) Defendants move to dismiss all claims against them, arguing that Plaintiff failed to exhaust available administrative remedies prior to filing suit and that the complaint fails to state a claim against any Defendant. (ECF No. 15-1.) Plaintiff opposes Defendants' Motion to Dismiss. (ECF No. 20.)

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3 of the Local Rules of Practice for the United States District Court for the Southern District of California.

---

[1] All page citations in this Order refer to those automatically generated by the CM/ECF system.

After a thorough review of Plaintiff's complaint, the parties' motion and opposition papers, and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (ECF No. 15).

## I. BACKGROUND

Plaintiff Darius Sims, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated this action by filing a complaint in this Court on April 10, 2017. (ECF No. 1.) On June 15, 2017, Plaintiff filed exhibits in support of his complaint. (ECF No. 5.) On June 29, 2017, the Honorable Cathy Ann Bencivengo found Plaintiff's complaint sufficient to survive the low threshold for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (ECF No. 6.)

Plaintiff alleges that Defendants' provision of medical care violated the Eighth Amendment. (ECF No. 1.)[2] Specifically, he asserts Defendants acted with deliberate indifference when they (1) failed to adequately treat his chronic pain; (2) prescribed a medication that previously caused Plaintiff's kidneys to fail; (3) refused to designate Plaintiff as a full-time wheelchair user; (4) interfered with Plaintiff's transfer to another facility; (5) harassed Plaintiff during and after his medical appointments; and (6) denied his healthcare appeals. (*Id*.)

Plaintiff makes the following allegations in his complaint:[3] Plaintiff suffers from chronic and severe pain as a result of his many aliments, which include gout, migraines, severe back pain, kidney disease, cardiac issues, vision impairment, hypertension, and

---

[2] In his Opposition to Defendants' Motion to Dismiss, Plaintiff makes reference to medical treatment by his current primary care physician, Dr. Santos, and the processing of Plaintiff's grievances by Warden Din. (ECF No. 20 at 5–6, 8–9.) The Court does not consider Plaintiff's statements regarding Dr. Santos or Warden Din as Plaintiff did not name these individuals as defendants and has not sought leave to amend his complaint to include claims against these individuals.

[3] The allegations contained in Plaintiff's complaint are accepted as true for purposes of assessing Defendants' motion to dismiss only. In addition, this Report and Recommendation does not provide a summary of all of the facts presented in the complaint but only those that are relevant to Plaintiff's claims against Defendants Walker, Chau, Clayton, Barenchi, and Strayhorn.

nerve damage. (*Id.* at 3–5.) Some of these ailments require Plaintiff to use a wheelchair for mobility. (*Id.*) Plaintiff's primary care physicians, Defendants Walker and Chau, did not adequately treat his pain when they failed to prescribe the medication Plaintiff requested, did not refer him to the pain management committee, and failed to treat his migraines. (*Id.*) In addition, Defendant Chau prescribed Plaintiff the medication allopurinol, which previously caused Plaintiff's kidneys to fail, as evidenced by his medical records. (*Id.* at 4.)

Plaintiff further alleges that he was transferred to RJDCF in retaliation for a prior lawsuit he filed against officials at another facility. (ECF No. 5 at 2.) Plaintiff was previously housed at Mule Creek State Prison ("Mule Creek"), but was transferred to California Health Care Facility, Stockton ("CHCF") after receiving two heart stints in December 2015. (*Id.*) At that time, he was litigating a case against Mule Creek officials for the medical care he had received. (*Id.*) Plaintiff was required to leave his legal documents at Mule Creek when he was transferred to CHCF. (*Id.*) He was subsequently transferred back to Mule Creek to retrieve his legal documents, with the understanding that he would be transferred back to CHCF after retrieving his documents. (*Id.*) Instead, he was transferred to RJDCF. (*Id.*) Plaintiff was transferred to RJDCF on or about May 2, 2016 as a "high risk patient." (*Id.* at 23.) Plaintiff was transferred from Mule Creek to RJDCF, instead of CHCF, as punishment for initiating a lawsuit against Mule Creek officials. (*Id.* at 2.)

Plaintiff alleges that he was previously housed at RJDCF in 2011, but was transferred to another facility in early 2012 because of his "problems" with Defendant Walker. (ECF No. 1 at 5.) Plaintiff's history with Defendant Walker affected the medical care he received at RJDCF. (*Id.*) Specifically, Plaintiff's history with Defendant Walker resulted in the denial of his request to be transferred back to CHCF and his request to be designated as a full-time wheelchair user, instead of a part-time wheelchair user. (*Id.*)

Lastly, Plaintiff alleges that Defendant Strayhorn, a correctional officer, interfered with his ability to obtain medical treatment by once forcibly removing Plaintiff from

Defendant Chau's office during an appointment and by refusing to call a wheelchair pusher after Plaintiff's appointments on several occasions, leaving Plaintiff outside in hot weather for over an hour. (*Id*. at 2–3.)

Plaintiff filed three grievances regarding his medical treatment at RJDCF. The first grievance, filed on September 12, 2016, stated that Defendants Walker and Chau were not adequately treating his pain and requested that Plaintiff be prescribed stronger pain medication or sent to a facility that was equipped to treat his illnesses. (ECF No. 5 at 27–29.) Plaintiff alleges that he spoke with Defendants Walker and Chau "several times" about this first grievance, but never received a response. (*Id*. at 3.) However, Plaintiff states in his Opposition to Defendants' Motion to Dismiss that he received a response to this grievance on May 31, 2017 and "never saw it again" after resubmitting the grievance for review. (ECF No. 20 at 7.) On November 9, 2016, Plaintiff submitted a second grievance inquiring about the status of his September 12, 2016 grievance. (ECF No. 5 at 31.) The record does not indicate when or whether Plaintiff received a response to this second grievance.

On November 29, 2016, Plaintiff submitted a third grievance stating that Defendants Walker and Chau were deliberately indifferent to Plaintiff's serious medical needs, resulting in "life threatening situations." (*Id*. at 54.) Plaintiff warned that the failure to treat his condition could result in further significant injury. (*Id*.) Plaintiff stated that Defendants Walker and Chau were aware of Plaintiff's pain but refused to respond to his pain as past doctors had. (*Id*.) Plaintiff stated that he asked Defendant Chau to provide him with a full-time wheelchair use accommodation, refer him to the pain management committee, and reinstate his outpatient housing status so that he could be transferred to CHCF. (*Id*.) In this grievance, Plaintiff requested a reinstatement of his past pain medication, a full-time wheelchair use accommodation, and a transfer to CHCF. (*Id*. at 52.) Plaintiff also referenced his first (September 12, 2016) grievance, stating that he spoke with Defendant Walker about this grievance but had not received it back. (*Id*. at 54.)

On January 13, 2017, Defendant Clayton interviewed Plaintiff about his third grievance. (*Id.* at 46.)[4] On February 4, 2017, Defendant Barenchi denied Plaintiff's appeal of his grievance at the first level of review. (*Id.* at 46–47.) Plaintiff's request to be designated as a full-time wheelchair user was denied because Defendant Barenchi found that Plaintiff was able ambulate with a cane. (*Id.*) Plaintiff's request to be transferred to outpatient housing at CHCF was denied because Defendant Clayton had found no medical indication for a transfer. (*Id.*) Lastly, Plaintiff's request to have his prior pain medication reinstated was denied as Defendant Clayton had found no clear medical indication for reinstatement of Plaintiff's narcotic pain medications. (*Id.*)

On April 7, 2017, Plaintiff's appeal of his third grievance was denied at the second level of review by Chief Medical Executive Dr. S. Roberts. (*Id.* at 48.) Dr. Roberts denied Plaintiff's request to be designated as a full-time wheelchair user because examinations of Plaintiff and his medical records indicated that Plaintiff was appropriately designated as a part-time wheelchair user. (*Id.*) Plaintiff's request to be transferred was denied because there was no current medical indication that Plaintiff's condition required a transfer. (*Id.*) Dr. Roberts denied Plaintiff's request to reinstate his prior medication because he found that Plaintiff was being appropriately treated with acetaminophen and gabapentin. (*Id.*)

Three days later, on April 10, 2017, Plaintiff filed his complaint in this action. (ECF No. 1.)

Plaintiff appealed his grievance to the third level of review on May 24, 2017. (ECF No. 5 at 51.) The record does not contain a decision at the third level of review; however, Plaintiff states in his Opposition to Defendants' Motion to Dismiss that he received a denial of this appeal at the third level on September 29, 2017. (ECF No. 20 at 4.)

*///*

---

[4] The first level denial of Plaintiff's appeal of his grievance states that Plaintiff was given the opportunity to fully explain his appeal issue(s). (ECF No. 5 at 46.)

## II. FAILURE TO EXHAUST

Defendants argue that this case should be dismissed because the face of the complaint indicates that Plaintiff failed to exhaust his administrative remedies before filing suit. (ECF No. 15-1 at 10.) Plaintiff argues that he exhausted all available remedies because RJDCF's grievance process is "broken." (ECF No. 20 at 4.) For the reasons set forth below, the Court finds that Plaintiff failed to exhaust available administrative remedies prior to filing suit and **RECOMMENDS** dismissal without prejudice.

### A. Legal Standards

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner challenging prison conditions to exhaust available administrative remedies before filing suit. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is a precondition to suit; exhaustion during the pendency of the litigation is insufficient. *McKinney*, 311 F.3d at 1199–1200.[5] This requirement promotes the PLRA's goal of efficiency by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an

---

[5] In *Cano v. Taylor*, 739 F.3d 1214, 1220 (2014), the Ninth Circuit held that new claims that arose prior to the filing of an initial complaint may be added to the complaint via amendment so long as they are administratively exhausted prior to amendment. *Cano* is inapplicable here because Plaintiff has not filed an amended complaint and cannot argue that he seeks to add new claims. *See Giles v. Felker*, 689 F. App'x 526, 527 (9th Cir. 2017) ("[E]xhaustion of administrative remedies before filing an amended complaint alleging the same claims does not constitute proper exhaustion.").

administrative record that is helpful to the court.'" *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. These rules are defined by the prison grievance process itself, not by the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[A] prisoner must 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) (quoting *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. *Harvey*, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b).

An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). In *Ross v. Blake*, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1858–59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting *Ross*,

7

136 S. Ct. at 1858–59). The Ninth Circuit has held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." *Andres*, 867 F.3d at 1079 (finding inmate's administrative remedies effectively unavailable when a state court found that prison improperly failed to process plaintiff's timely filed grievance). *See also Williams v. Paramo*, 775 F.3d 1182, 1192 (9th Cir. 2015). "In such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable." *Andres*, 867 F.3d at 1079 (quoting *Ross*, 136 S. Ct. at 1859).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172. In most circumstances, the appropriate procedural mechanism is a motion for summary judgment under Federal Rule of Civil Procedure 56, with the defendant attaching the evidence necessary to demonstrate a failure to exhaust. *Id*. at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id*.

### B. Analysis

Plaintiff concedes that he did not receive a third level response to the appeal of his November 29, 2016 grievance prior to filing this action, but argues that he nonetheless exhausted available administrative remedies for two reasons: First, because prison administrators failed to respond to his first (September 12, 2016) grievance. (ECF No. 20 at 7.) Second, Plaintiff argues that the appeal process is "broken" because it "take[s] months to respond to my HC 602's to run out of time or to get Plaintiff to lose interest in filing grievances." (*Id*. at 4.)

Defendants argue that Plaintiff's complaint must be dismissed because he concedes that he failed to exhaust the administrative remedies available to him for his November 29,

2016 grievance before filing suit. (ECF No. 21 at 2.)[6] Defendants also argue that Plaintiff failed to exhaust his claims against Defendants Strayhorn, Barenchi, and Clayton as he makes no mention of these Defendants in his grievances. (ECF No. 15-1 at 12.)

Defendants' argument that Plaintiff failed to exhaust his administrative remedies as to Defendants Strayhorn, Barenchi, and Clayton because he did not name them in his grievances fails at this early stage of the litigation. A prison's grievance procedures determine the level of detail an inmate must include in an administrative grievance to properly exhaust a claim. *Jones*, 549 U.S. at 218. The California Code of Regulations requires that Plaintiff's CDCR Form 602 grievance "list all staff members involved," and "describe their involvement in the issue under appeal," including the "dates of the staff member's involvement." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Further, he must "describe the specific issue under appeal and the relief requested," and "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form." *Id*. at 3084.2(a)(4). An appeal generally "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).

Plaintiff refers to Defendants Barenchi and Clayton in his appeal by stating in his objection to the first level response, "If this prison wants another civil suite [sic] because of my failing health problems, here we go again; Clayton, Barenchi, Walker, Chau." (ECF No. 5 at 53.) In addition, Plaintiff states in his objection to the second level denial of his appeal that, "in speaking to Dr. Clayton, he states that I should be sent back to CHCF." (*Id*. at 51.) The documentation of Plaintiff's grievances and appeals that the Court has before it do not in any manner identify Defendant Strayhorn as a staff member involved in the issues under appeal. (*See id*. at 27–29, 52–59.) However, Plaintiff's November 29,

---

[6] Defendants' Motion to Dismiss and Reply do not address Plaintiff's argument that prison officials' failure to respond to his first (September 12, 2016) grievance exhausted his remedies, or even make mention of this grievance. (*See* ECF Nos. 15-1, 21.)

2016 grievance indicates that Plaintiff attached "25 pages listed as Exhibits," which are not contained in the record before the Court. (*Id*. at 52.) Without the benefit of the exhibits attached to Plaintiff's grievance, this Court cannot find that it is clear from the face of the complaint that Plaintiff failed to put the prison on notice of his claims against Defendants Strayhorn, Clayton, or Barenchi. *See Albino*, 747 F.3d at 1169–70. It may well be that Plaintiff failed to properly identify these Defendants in his grievances, but this argument is more properly raised in a motion for summary judgment. *See id*.

Regardless of whether Plaintiff adequately identified Defendants Strayhorn, Clayton, and Barenchi in his grievances, it is clear from the face of the complaint that Plaintiff failed to exhaust available administrative remedies prior to filing suit. Exhaustion is measured at the time the operative complaint is filed. *Andres*, 867 F.3d at 1079 (citing *McKinney*, 311 F.3d at 1199); *Cano*, 739 F.3d at 1220–21. Plaintiff filed his complaint on April 10, 2017. (ECF No. 1.) Plaintiff's appeal of the decision on his November 29, 2016 grievance was denied at the second level of review just three days before he filed his complaint. (*See* ECF No. 5 at 48.)[7] Plaintiff did not appeal this denial until May 24, 2016. (*Id*. at 51.) In fact, Plaintiff concedes in his Opposition to Defendants' Motion to Dismiss that he did not receive a third level response to his appeal until September 29, 2017, over five months after he filed his complaint. (ECF No. 20 at 4.)[8] It is clear from the face of the complaint that Plaintiff failed to exhaust the administrative remedies available to him for his November 29, 2016 grievance before he filed suit.

Plaintiff argues that he nonetheless properly exhausted administrative remedies before filing suit because prison officials did not respond to his first (September 12, 2016) grievance.

---

[7] In fact, in his appeal to the third level of review, Plaintiff refers to this action, stating that the same type of mistreatment that prompted Plaintiff to file a former lawsuit also "prompted a suit here: Sims v. Walker et al." (ECF No. 5 at 53.)

[8] In the complaint, Plaintiff indicates that he exhausted all forms of available relief prior to filing suit, but in explaining this alleged exhaustion, refers only to his prior claims against Mule Creek officials. (*See* ECF No. 1 at 6, 8.)

Whether administrative remedies are available is a practical inquiry into the functional availability of remedies. *See Ross*, 136 S. Ct. at 1858–59 (grievance procedures are available when they "are capable of use to obtain some relief for the action complained of") (internal citations omitted). The Ninth Circuit has held that administrative remedies were unavailable when prison officials improperly failed to process a prisoner's grievance. *Andres*, 867 F.3d at 1079. In *Andres*, the plaintiff filed a grievance alleging that staff members used excessive force against him. *Id*. at 1077. Approximately six months later, having received no response to his grievance, plaintiff filed an action in federal court alleging the use of excessive force. *Id*. Before filing in federal court, plaintiff filed a petition for a writ of habeas corpus in state court regarding his attempt to exhaust his excessive force claim. *Id*. The state court held an evidentiary hearing and found that plaintiff had timely filed a grievance and ordered the prison to accept and process plaintiff's grievance. *Id*. at 1078. The Ninth Circuit held that plaintiff had exhausted his available remedies because at the time he filed suit, prison officials had not processed plaintiff's grievance. *Id*. at 1078–79.

Plaintiff's situation here differs from that of *Andres*. At the time Plaintiff filed his complaint he was actively pursuing administrative remedies for his claims and the grievance process was proceeding without excessive delay. Plaintiff raised the same issues regarding pain management and transfer to another institution in his November 29, 2016 (third) grievance as were raised in his September 12, 2016 (first) grievance. (*See* ECF No. 5 at 27–28, 50–54.) On the date Plaintiff filed his complaint, his November 29, 2016 (third) grievance had been denied at the second level of review and Plaintiff had not yet appealed this decision to the final level of review. (*Id*. at 48–49.) As a practical matter, administrative remedies were "capable of use; at hand" because Plaintiff was utilizing these processes at the time he filed suit. *Albino*, 747 F.3d at 1171. Plaintiff failed to exhaust these remedies before filing his complaint.

Plaintiff further argues that the appeal process is "broken" because prison officials generally fail to respond to grievances, and cites as evidence the fact that RJDCF officials

did not timely respond to grievances Plaintiff filed on incidents unrelated to his claims in this case. (ECF No. 20 at 2–4.) The question here is whether administrative remedies were available to Plaintiff "*for the action complained of*" in this case. *See Ross*, 136 S. Ct. at 1858–59 (emphasis added). The argument that prison officials failed to respond to Plaintiff's unrelated grievances does not supplant the fact that the face of the complaint indicates that officials responded to the grievance that raised the claims Plaintiff alleges in this case.

Accordingly, the Court **RECOMMENDS dismissal of Plaintiff's complaint without prejudice** on the basis that Plaintiff failed to exhaust his administrative remedies before filing suit.

### III. EIGHTH AMENDMENT CLAIMS

In the event the District Judge does not adopt the recommendation to dismiss Plaintiff's complaint without prejudice due to a failure to exhaust, the Court addresses the other bases of Defendants' Motion to Dismiss and makes the following, alternative recommendations.

#### A. LEGAL STANDARDS

##### 1. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the claims in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the Plaintiff will "ultimately prevail but whether the [Plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).

12

*Ashcroft v. Iqbal* sets forth a two-step approach for evaluating the sufficiency of a complaint, whereby a court may first identify legal conclusions in the complaint not entitled to an assumption of truth, and then analyze the remaining well-pled factual allegations to determine whether the complaint states a plausible claim for relief. 556 U.S. 662, 678–79 (2009). At the first step, a court identifies all well-pled factual allegations contained in the complaint, which the court must accept as true. *Id.* at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to an assumption of truth. *Id.* "[D]etailed factual allegations" are not required, but a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Plaintiff to relief." *Moss*, 572 F.3d at 969 (quotations omitted).

## 2. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a Plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford Plaintiff any benefit of the doubt. *Hebbe v.*

*Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the Plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

### 3. Eighth Amendment Claims

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For a prisoner to demonstrate an Eighth Amendment violation, two components must be satisfied. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the alleged deprivation must be sufficiently serious. *Id.* at 1059–60. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). The existence of "any injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," for example, would indicate that a prisoner has a "serious" need for medical treatment. *Id.*; *accord Lopez v. Smith*, 203 F.3d 1122, 1131–32 (9th Cir. 2000).

Second, the prison officials involved must have acted with deliberate indifference to the inmate's serious medical needs. *See Wilson v. Seiter*, 501 U.S. 294, 302–04 (1991). This is a subjective requirement. *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). To act with deliberate indifference, a prison official must know of and disregard a serious medical need or an excessive risk to the inmate's health and safety. *Toguchi v. Chung*, 391 F.3d

14

1051, 1057 (9th Cir. 2002) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). The court must focus on "what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Farmer*, 511 U.S. at 838–39. "Even if a prison official *should* have been aware of the risk, if he 'was not, then he has not violated the Eighth Amendment, no matter how severe the risk.'" *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (quoting *Gibson*, 290 F.3d at 1188).

To amount to an Eighth Amendment violation, deliberate indifference to an inmate's serious medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) ("The deliberate indifference doctrine is limited in scope."). To amount to deliberate indifference, a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need. *McGuckin*, 974 F.2d at 1060.

Furthermore, differences in judgment between a prisoner and a prison official regarding an appropriate medical diagnosis and course of treatment are not enough to establish a deliberate indifference claim. *Estelle*, 429 U.S. at 107–08; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). On the other hand, if the prison official responded reasonably to a risk to the prisoner's health, he

or she cannot be found liable, even if harm was not ultimately avoided. *Farmer*, 511 U.S. at 844.

## B. ANALYSIS

Defendants argue that all of Plaintiff's claims should be dismissed for failure to state a claim. (ECF No. 15-1.) Defendants argue that Plaintiff merely alleges a difference of medical opinion between himself and his medical providers, or at best, a theory of negligence or medical malpractice, neither of which amount to an Eighth Amendment violation. (*Id.* at 5.) The Court finds that Plaintiff alleges sufficient facts to state a claim that (1) Defendant Walker acted with deliberate indifference when he denied Plaintiff's request to be designated as a full-time wheelchair user, and (2) Defendant Strayhorn acted with deliberate indifference and interfered with treatment of Plaintiff's serious medical needs. Plaintiff fails to allege sufficient facts to state any other claim. Plaintiff may, however, be able to cure some of the defects of his claims, so the Court recommends these claims be dismissed with leave to amend. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624–25 (9th Cir. 1988).

### 1. Claims Against Defendants Walker and Chau

Plaintiff alleges claims against Defendants Walker and Chau, his primary care physicians, for failure to treat his chronic pain, prescription of certain medication, refusal to designate Plaintiff as a full-time wheelchair user, and interference with Plaintiff's transfer to CHCF. (ECF No. 1 at 3–5.)

### a. Chronic Pain Treatment

Plaintiff alleges that he suffers from a host of conditions, including gout, migraines, severe back pain, kidney disease, cardiac issues, vision impairment, hypertension, and nerve damage. (*Id.* at 3–5; ECF No. 5 at 2–3.) As a result, Plaintiff alleges that he experiences severe, chronic pain. (ECF No. 1 at 3.) Plaintiff alleges that Defendants failed to adequately treat his pain. (*Id.* at 3–5.) Specifically, Plaintiff alleges that Defendants Chau and Walker failed to refer him to a pain management committee for treatment, did not treat his severe migraines, and failed to prescribe Plaintiff the specific pain medication

he requested. (*Id.*) Plaintiff alleges that he asked Defendant Chau to refer him to the pain management committee. (ECF No. 5 at 29.) Plaintiff alleges that he was informed that he would be referred, "but they[9] did not even submit any pain intake information and has left me to suffer day in - day out with unnecessary pain." (ECF No. 1 at 3.) Plaintiff alleges that he suffers from migraines, which he characterizes as his "season of hell," that require him to receive meals in his cell because the pain is so severe that Plaintiff is sometimes unable to leave his bed. (ECF No. 5 at 55.) Plaintiff alleges that "Drs. Walker and Chau are aware of my severe pain problems + they fail to take action to relieve my pain as past doctors did." (*Id.* at 54.) Plaintiff alleges that he requested prescriptions for morphine and gabapentin. (*Id.*) Instead, Plaintiff alleges, Defendant Chau prescribed Tylenol and allopurinol. (*Id.*) Plaintiff alleges that the Tylenol "does nothing for me" and that allopurinol "is the cause of my acute renal failure." (*Id.*)[10] Plaintiff attaches medical records indicating that prior doctors, including Defendant Walker, prescribed Plaintiff morphine in 2011. (*Id.* at 2, 6–8.) Plaintiff's medical records also indicate that Dr. Chau prescribed Plaintiff gabapentin beginning on December 12, 2016, with the prescription continuing at least through April 30, 2017. (*Id.* at 41.) His medical records further indicate that Defendant Clayton prescribed Plaintiff morphine on April 7, 2017, with the prescription continuing at least through June 1, 2017. (*Id.* at 41–43.)

Plaintiff's allegations regarding the severe, chronic pain he experiences sufficiently state the existence of a serious medical need as he alleges that his severe pain affects his daily activities and ability to access basic needs. *See McGuckin*, 974 F.2d at 1059–60.

Plaintiff's allegations against Defendant Chau for treatment of Plaintiff's pain are insufficient to state a claim of deliberate indifference.[11] Plaintiff fails to make any non-

---

[9] Plaintiff refers generally to "Defendants" and "they" throughout his complaint without specifying which Defendants he refers to. Here, the Court construes "they" as a reference to Defendants Walker and Chau.
[10] Plaintiff's allegations regarding Defendant Chau's prescription of allopurinol are addressed below.
[11] Plaintiff makes only conclusory allegations that Defendant Chau failed to provide him with *any* treatment for his pain. (*See* ECF No. 1 at 4–5; ECF No. 5 at 55.) Plaintiff's statements in his grievances, and his medical records, instead indicate that Defendant Chau treated Plaintiff's pain with Tylenol and

17-cv-00722-CAB-JLB

conclusory allegations regarding Defendant Chau's subjective knowledge of Plaintiff's condition when he decided on a course of treatment. Plaintiff alleges that Defendant Chau was his primary care physician, but fails to allege how, when, or if Defendant Chau learned of the severe and debilitating nature of Plaintiff's chronic pain and migraines. (*See* ECF No. 5 at 2.) Plaintiff alleges only that Defendant Chau is "aware of my severe pain problems." (*Id*. at 54.) Plaintiff also fails to allege that Defendant Chau knew that the Tylenol and allopurinol he prescribed were ineffective. As a result, Plaintiff fails to adequately allege that Defendant Chau was subjectively aware of Plaintiff's condition. *See Jett*, 439 F.3d at 1096.

Even if the Court were to assume that Defendant Chau knew the severity of Plaintiff's chronic pain and knew that his medication was inadequate, Plaintiff fails to allege that Defendant Chau deliberately disregarded this pain. Plaintiff alleges that Defendant Chau prescribed Tylenol and allopurinol, and that these medications were insufficient to treat Plaintiff's pain. (ECF No. 5 at 29, 55.) Plaintiff fails to specify when Defendant Chau declined to prescribe Plaintiff the other pain medication he requested or when he failed to refer Plaintiff to the pain management committee. This is problematic because Plaintiff's medical records indicate that Defendant Chau prescribed Plaintiff several pain medications, including gabapentin, to treat his pain in 2016 and 2017. (*See id*. at 41, 43.) And Defendant Clayton prescribed Plaintiff morphine in 2017. (*Id*.) So these Defendants prescribed the very pain medications Plaintiff complains he was wrongly denied.

Even if the Court infers that for a period of time Plaintiff was not prescribed the specific medications he is requesting here, Plaintiff fails to allege that Defendant Chau's course of treatment was medically unacceptable under the circumstances, or that Defendant Chau chose this course in conscious disregard of an excessive risk to Plaintiff's health.

---

other pain medications. (ECF No. 5 at 29, 41, 43, 55.) Plaintiff's objection, then, arises not from a failure to treat, but from Defendant Chau's chosen course of treatment.

*Jackson*, 90 F.3d at 332. As pled, Plaintiff's allegations against Defendant Chau—that he failed to refer Plaintiff to a pain management committee and prescribe Plaintiff the specific pain medication he requested—amount to no more than a difference in medical opinion between himself and Defendant Chau. Nor are Plaintiff's claims saved by the allegation that Defendant Chau failed to address Plaintiff's pain in the same manner as his past doctors, as this amounts to no more than a difference in medical opinion between Defendant Chau and Plaintiff's prior physicians. Without more, such differences in opinion are insufficient to state a claim of deliberate indifference. *Id*. ("[A] plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference.") (internal quotation marks omitted); *Toguchi*, 391 F.3d at 1058. As a result, Plaintiff fails to plead sufficient facts to state a claim of deliberate indifference against Defendant Chau for treatment of Plaintiff's pain.

For similar reasons, Plaintiff fails to state a claim against Defendant Walker for his treatment of Plaintiff's pain. Plaintiff alleges that the deliberate "indifference manifested by these prison doctors in their non-action to my medical requirements is a violation of the 8th Amendment," but fails to identify which doctors were deliberately indifferent, or how or when these doctors were deliberately indifferent. (ECF No. 1 at 3.) As to Defendant Walker's treatment of Plaintiff's pain, Plaintiff alleges only that Defendant Walker "is aware of my heart attacks, damage to spine, nerve damage to entire leftside [sic], kidney disease, limited use of left leg and hands, and failed to take action to relieve my pain." (*Id*. at 2.) Plaintiff fails to allege how or when Defendant Walker was made aware of Plaintiff's pain. Furthermore, Plaintiff fails to allege that Defendant Walker responded to Plaintiff's pain with purposeful action or inaction that caused Plaintiff harm. *See Jett*, 439 F.3d at 1096. Plaintiff alleges only that Defendant Walker "fail[ed] to take action to relieve" his pain. (ECF No. 5 at 54.) Such conclusory allegations are insufficient to state a claim that Defendant Walker was deliberately indifferent in his treatment of Plaintiff's pain. *See Iqbal*, 556 U.S. at 678–79.

### b. Prescription of Allopurinol

Plaintiff alleges that Defendant Chau was deliberately indifferent to the risk that Plaintiff's kidneys would fail when he prescribed Plaintiff allopurinol. (ECF No. 1 at 4.) On July 18, 2014, Plaintiff's prior physician, Dr. Do, stated in his consultation notes that he was "100% convinced the allopurinol is the reason" Plaintiff experienced acute kidney failure earlier that year. (ECF No. 5 at 40.) Dr. Do noted that he would immediately stop prescribing Plaintiff allopurinol. (*Id.*) Approximately two years later,[12] at RDJCF, Plaintiff alleges that Defendant Chau prescribed him allopurinol. (ECF No. 1 at 4.) Plaintiff alleges that he "tried [sic] to show my health problems by showing documents of past doctors['] medications I used to combat my illness and Chau then trys [sic] to prescribed [sic] the pill 'Allopurinol' in which this pill destroyed my kidneys." (*Id.*) He also alleges, "These doctors don't seem to read my file before prescribing me medication." (*Id.*) In his September 12, 2016 grievance, Plaintiff alleges that the allopurinol does not relieve his chronic pain and "is the cause of my acute renal failure." (ECF No. 5 at 29.)[13] Plaintiff's medical records indicate that Defendant Chau referred Plaintiff back to nephrologist, Dr. Do, on August 19, 2016. (*Id.* at 20.)[14]

Plaintiff alleges a serious medical need—the risk that his kidneys may fail. *See McGuckin*, 974 F.2d at 1059–60. Plaintiff does not, however, allege facts sufficient to state a claim of deliberate indifference. For a prison official to be held liable for deliberate indifference he "must both be aware of facts from which the inference could be drawn that

---

[12] Plaintiff does not indicate when Defendant Chau prescribed him allopurinol.

[13] It is not clear from Plaintiff's complaint or the attached exhibits whether Plaintiff alleges that his kidneys have once again failed as a result of taking allopurinol, or if Plaintiff instead alleges only that he was at risk of kidney failure. (*See* ECF No. 1 at 4; ECF No. 5 at 29.) Plaintiff's Opposition to Defendants' Motion to Dismiss states that, "Allpurinol is not allopurinol and Dr. Chau did not prescrib [sic] this allpurinol or allopurinol to treat Plaintiff's kidney disease, it is to combat 'gout' outbreaks in which the medication allopurinol did effect Plaintiff's kidneys, which are now stage four kidney disease." (ECF No. 20 at 7.) This statement does not clarify the chronology.

[14] As noted above, Plaintiff fails to identify when Defendant Chau prescribed him allopurinol. Thus, the Court cannot determine if Defendant Chau referred Plaintiff back to Dr. Do before or after he prescribed allopurinol.

a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Thus, 'there is no Eighth Amendment violation when jail officials give the wrong medication to an inmate unless they were aware the inmate would react negatively to the medication.'" *Martinez v. United States*, 812 F. Supp. 2d 1052, 1059 (C.D. Cal. 2010) (quoting *Scott v. Bick*, No. S-08-0117 LKK JFMP, 2008 WL 449798, at *3 (E.D. Cal. Feb. 15, 2008); *Murillo v. Thornton*, No. 07-CV-0197 W POR, 2008 WL 110899, at *4 (S.D. Cal. Jan. 9, 2008)). *See also Toguchi*, 391 F.3d at 1058 (defendant's prescription of medication plaintiff previously had a negative reaction to did not amount to deliberate indifference when defendant did not believe that the medication presented a serious risk of harm to plaintiff at that time); *Montano v. Solomon*, No. 2:07-cv-0800 KJN P, 2013 U.S. Dist. LEXIS 72033, at *20–22 (E.D. Cal. May 20, 2013) (finding defendant's alleged failure to review medical file before prescribing medication that previously caused an allergic reaction amounted to no more than negligence).

Here, Plaintiff fails to allege that Defendant Chau knew that prescribing allopurinol presented a risk that Plaintiff's kidneys would fail. *See Farmer*, 511 U.S. at 838–39. Plaintiff alleges that he "tryed [sic] to show my health problems," but it is not clear who Plaintiff provided with documents, and Plaintiff further alleges his belief that the doctors did <u>not</u> read his file before prescribing the medication. (*See* ECF No. 1 at 4.) Even if the Court infers that Defendant Chau saw the documents, Plaintiff fails to allege that these documents would inform Defendant Chau of the risk of prescribing Plaintiff allopurinol. Plaintiff alleges he showed "documents of past doctors['] medications I used to combat my illness." (*Id.*) The fact that Plaintiff's previous doctors prescribed him medication other than allopurinol does not convey that prescription of allopurinol may cause Plaintiff's kidneys to fail. Plaintiff does not allege that he ever communicated the risk of prescribing allopurinol to Defendant Chau. Nor does Plaintiff allege that Defendant Chau had

knowledge of this risk by some other means.[15] As pled, the Court cannot reasonably infer that Defendant Chau knew that prescribing allopurinol presented the risk that Plaintiff's kidneys may fail; much less, that he subjectively disregarded this risk.

### c. Wheelchair Status

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs when they declined to provide him with a full-time wheelchair use accommodation and instead designated him as a part-time wheelchair user. (ECF No. 1 at 5.) Plaintiff alleges that, even with a cane, he "can't walk 10 feet, and I have to hold on to a wall or something, this is an everyday struggle just to get to the toilet in my cell." (*Id*. at 4.) He further alleges that at some point he lost fifty percent of the use of his left leg. (ECF No. 5 at 55.) Plaintiff's medical records indicate that on January 22, 2016, a Mule Creek doctor issued Plaintiff a permanent accommodation as a full-time wheelchair user. (*Id*. at 24.) When he arrived at RJDCF, however, Plaintiff was not provided the same accommodation. (*See id*. at 54.) Plaintiff alleges that Defendants Walker and Chau denied his request to be designated as a full-time wheelchair user. (*Id*.; ECF No. 1 at 5.) Plaintiff alleges that he informed Defendant Walker that a doctor from CHFC stated that Plaintiff should be designated as full-time wheelchair user because of his kidney, cardiac, migraine, and spine conditions. (ECF No. 1 at 5.) Plaintiff alleges that Defendant Walker denied his request for an improper, non-medical reason. (*Id*.) Specifically, Plaintiff alleges that he was previously transferred from RJDCF to a different institution "because of difficulty's [sic] with medical personel [sic] (Dr. Walker) and custody." (*Id*.) Plaintiff alleges that it "[m]ay be because of my problems with Dr. Walker, I am having these problems with these other doctors Chau, Clayton and Barechi." (*Id*.) Plaintiff further alleges that "[t]he actions of

---

[15] In his Opposition to Defendants' Motion to Dismiss, Plaintiff argues that "all that I said to these Dr. [sic] were ignored by them in which under their care my illnesss [sic] got worst [sic]" and that "these doctors are not reading my medical file correctly." (ECF No. 20 at 7.) Plaintiff's argument fails to shed any light on whether Defendant Chau had knowledge of the risk of prescribing Plaintiff allopurinol as he does not identify which doctors ignored Plaintiff's statements, what Plaintiff said to these doctors, or who misread his medical file and in what manner.

Dr. Walker past with me shows an improper motive to how I am being treated—non medically. He stated he remembered our past and now I am being treated with deliberate indifferent [sic] to all medical treatment, to any of my medical requests." (*Id.*)

Plaintiff states a serious medical need as he alleges that his immobility affects his daily activities and access to basic needs. *See McGuckin*, 974 F.2d at 1059–60.

Plaintiff fails to state a claim, however, that Defendant Chau was deliberately indifferent to this serious need when he declined to reinstate Plaintiff's designation as a full-time wheelchair user. As discussed above, for a prison official to be held liable for deliberate indifference he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Here, Plaintiff fails to allege that Defendant Chau knew of Plaintiff's alleged immobility or his other conditions warranting full-time wheelchair use. Plaintiff does not allege that he, or anyone else, communicated Plaintiff's mobility challenges to Defendant Chau, or that Defendant Chau was otherwise made aware of Plaintiff's condition. Furthermore, Plaintiff fails to allege that Defendant Chau deliberately disregarded this serious medical need. Plaintiff's allegation that he "may" be having "problems" with Defendant Chau, among other Defendants, because of his prior history with Defendant Walker fails to allege that Defendant Chau denied Plaintiff's request because of his past with Defendant Walker. (*See* ECF No. 1 at 5.) Plaintiff fails to allege why, when, or how Defendant Chau denied his request. Accordingly, Plaintiff fails to state a claim that Defendant Chau was deliberately indifferent when he declined to designate Plaintiff as a full-time wheelchair user.

Plaintiff states a claim, however, that Defendant Walker was deliberately indifferent to his medical needs when he refused to provide Plaintiff with a full-time wheelchair accommodation. Plaintiff alleges that he communicated to Defendant Walker that he needed to use his wheelchair full time because of his kidney, cardiac, migraine, and spine conditions. (*Id.*) Construing Plaintiff's complaint liberally, Plaintiff alleges that Defendant Walker denied his request, not based on his evaluation of Plaintiff's medical condition, but

based on a past history with Plaintiff. (*Id.*) As a result, Plaintiff alleges that he is unable to access basic necessities and has trouble accessing the toilet. (*Id.* at 4.) Accordingly, Plaintiff has alleged sufficient facts to state a claim that Defendant Walker was aware of Plaintiff's serious medical need, but nonetheless purposefully disregarded this need, resulting in harm to Plaintiff. *See Farmer*, 511 U.S. at 837; *Jett*, 439 F.3d at 1096.

### d. Transfer to CHCF

Plaintiff alleges that he should be classified for outpatient housing and transferred to CHCF because his many health conditions cannot be properly treated at RJDCF. (ECF No. 5 at 3.) Plaintiff alleges that "it seems Walker and Chau stopped my transfer" to CHCF. (ECF No. 1 at 3.) As stated above, Plaintiff was previously housed at CHCF, but was transferred to Mule Creek and then to RJDCF. (ECF No. 5 at 2.) Plaintiff was transferred to RJDCF on or about May 2, 2016 as a "high risk patient." (*Id.* at 23.) Plaintiff alleges that he was transferred from Mule Creek to RJDCF, instead of CHCF, as punishment for initiating a lawsuit against officials at Mule Creek. (*Id.* at 2.) In August or September 2016, Plaintiff alleges that officials from CHCF called Plaintiff to ask why Plaintiff was sent to RJDCF instead of CHCF. (*Id.*) Plaintiff alleges that he spoke to Defendants Walker and Chau about being transferred to CHCF after this phone call. (*Id.* at 2–3.) Plaintiff alleges that he told Defendant Walker that he needed to be transferred to CHCF and classified for outpatient housing because of his kidney, cardiac, migraine, and spine conditions. (ECF No. 1 at 5.) As with Plaintiff's request to be placed on full-time wheelchair status, Plaintiff alleges that Defendant Walker stopped the transfer to CHCF not for a medical reason, but because of his "past" with Plaintiff. (*Id.*) As a result, Plaintiff alleges, he is "not and will not be able to receive adequate medical treatment at this institution." (ECF No. 5 at 53.)

Plaintiff sufficiently pleads a serious medical need—inadequate treatment of his many medical conditions. *See McGuckin*, 974 F.2d at 1059–60. Plaintiff fails, however, to state a claim that Defendants Walker or Chau were deliberately indifferent to this serious medical need when they declined Plaintiff's request for a transfer to CHCF. First, Plaintiff

makes only conclusory allegations that he is unable to receive adequate medical care at RJDCF. (*See* ECF No. 5 at 53; ECF No. 1.) Plaintiff fails to explain why his health conditions cannot be properly treated at RJDCF, but would be properly treated at CHCF. (*See id.*) Plaintiff states only that he is "not and will not be able to receive adequate medical treatment at [RJDCF]." (ECF No. 5 at 53.) To the extent Plaintiff alleges that he cannot receive adequate medical treatment at RJDCF because of his past history with Defendant Walker, Plaintiff has not alleged facts that would allow the Court to reasonably infer that Defendant Walker exhibits such broad, unchecked control over his medical care and all of Plaintiff's medical providers. At most, Plaintiff's allegations amount to a difference in medical opinion between Plaintiff, CHCF personnel, and Defendants. As discussed above, a mere difference in medical opinion is insufficient to state a claim of deliberate indifference. *Toguchi*, 391 F.3d at 1058.

Second, Plaintiff alleges only that "it seems Walker and Chau stopped my transfer" to CHCF. (ECF No. 1 at 3.) Plaintiff fails to allege any facts to support this conclusion. Without such facts, the Court cannot reasonably infer that Defendants Walker and Chau prevented Plaintiff's transfer; much less that they acted with deliberate indifference in doing so. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Accordingly, Plaintiff fails to state a claim against Defendants Walker or Chau for interference with his transfer to CHCF.

### 2. Claims Against Defendant Strayhorn

Plaintiff alleges that Defendant Strayhorn intentionally interfered with his medical treatment by once forcibly removing Plaintiff from Defendant Chau's office during an appointment and by refusing to call a wheelchair pusher after Plaintiff's appointments on several occasions. (ECF No. 1 at 2–3.) Plaintiff alleges that Defendant Strayhorn once roughly pulled him out of the doctor's office in his wheelchair while Plaintiff was speaking to Defendant Chau and stated, "Your time is up, nobody cares about what you are saying." (*Id.* at 3.) Plaintiff also alleges that on several occasions Defendant Strayhorn refused to call for a wheelchair pusher to transport Plaintiff back to his housing unit, causing Plaintiff

to sit in 80 to 100 degree heat for over an hour. (*Id.* at 2.) Plaintiff alleges that Defendant Strayhorn "harasses" him every time he has an appointment at c-yard medical center, and that because of this, Plaintiff sometimes decides not to go to his appointments. (*Id.* at 3.) Plaintiff alleges that Defendant Strayhorn is "a cruel man as he has many complaints on him for mistreatment of prisoners at the c-yard medical center." (*Id.*) Plaintiff states that "these delays in my medical treatment have involved life threatening situations and is [sic] apparent that delay would exacerbate my medical problems." (*Id.*)

Delay of, or intentional interference with, medical treatment can amount to deliberate indifference. *Jett*, 439 F.3d at 1096. To state a deliberate indifference claim on these grounds, however, a plaintiff must also sufficiently allege harm caused by the delay or interference. *See id.* In addition, "[i]f the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105).

Plaintiff states a claim that Defendant Strayhorn was deliberately indifferent to his serious medical needs when he intentionally interfered with Plaintiff's medical care. Plaintiff alleges a serious medical need as he suffers from numerous illnesses that cause him chronic pain and require frequent medical treatment. *See McGuckin*, 974 F.2d at 1059–60. Plaintiff alleges that on one occasion, Defendant Strayhorn physically forced Plaintiff to leave a medical appointment by roughly pulling him out of the doctor's office. (ECF No. 1 at 3.) Physically removing Plaintiff from a medical appointment while Plaintiff was still speaking with the doctor can constitute a purposeful act of interference with Plaintiff's medical needs. *See Jett*, F.3d at 1096. Furthermore, Plaintiff's assertion that Defendant Strayhorn said, "[N]obody cares about what you are saying," suffices to allege subjective intent. (*See id.*) Specifically, if established, this statement by Defendant Strayhorn would suggest that Defendant Strayhorn physically removed Plaintiff from his appointment not for a legitimate reason, but as a result of animus. In addition, Plaintiff alleges that on several occasions Defendant Strayhorn refused to call for a wheelchair pusher after Plaintiff's appointments, abandoning Plaintiff outside in the heat. This could

also constitute an act of intentional interference with Plaintiff's medical care. Plaintiff alleges that he suffered harm as a result of Defendant Strayhorn's actions—he was left to sit in eighty to one hundred degree heat for over an hour after appointments. *See Jett*, F.3d at 1096. Plaintiff alleges that these were not isolated incidents, but that Defendant Strayhorn repeatedly interfered with Plaintiff's medical treatment by harassing Plaintiff every time he had an appointment in the c-yard, in addition to abandoning Plaintiff in the heat and forcibly removing him from the one medical appointment. These allegations are sufficient to state a claim that Defendant Strayhorn acted with deliberate indifference and interfered with Plaintiff's medical care.

### 3. Claims Against Defendant Barenchi

Plaintiff fails to state a claim against Defendant Barenchi as he makes only conclusory allegations against him. Plaintiff names Defendant Barenchi[16] as a defendant and states, "Federal civil rights statute arises when supervisor is liable for constitutional violation of his subordinate when he participated in directed [sic] violation and failed to act to prevent them, case in point I suffer with chronic pain and am unable to walk because of this pain as displayed in medical 602." (ECF No. 1 at 2.) Plaintiff further alleges the that "Doctors Clayton, Walker, Chau, Barenchi's diagnosis are [sic] wrong when speaking about my health problems;" and, "[a]s to my 11.29.16 healthcare medical 602 was overlooked by doctors Clayton, Walker, Chau and Barenchi, '8th Amendment violation of serious medical needs,' stated 'negligent misdiagnosis is when the doctor diagnosis is wrong!'" (*Id*. at 4.) The Court construes Plaintiff's allegations against Defendant Barenchi as a claim that Defendant Barenchi is liable for a constitutional violation because he personally participated in a constitutional violation, directed his subordinates to commit a constitutional violation, and/or failed to act to prevent a constitutional violation.

---

[16] Plaintiff refers to Defendant Barenchi as both "Barechi" and "Barenchi" throughout his complaint. The Court refers to him as Defendant Barenchi because the response to Plaintiff's first level appeal of his November 29, 2016 grievance identifies "R. Barenchi" as the Chief Physician & Surgeon at RJDCF. (ECF No. 5 at 47.)

There is no vicarious liability for civil rights violations.  *Iqbal*, 556 U.S. at 676–77; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Under § 1983, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a 'sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  To demonstrate a sufficient causal connection, "a plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury."  *Starr*, 652 F.3d at 1207 (quoting *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)).  "'The requisite causal connection can be established by setting in motion a series of acts by others' . . . or by 'knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'"  *Id.* at 1207–08 (quoting *Redman*, 942 F.2d at 1447, then *Dubner v. City & Cty. Of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

Here, Plaintiff fails to allege any facts that could reasonably be construed as Defendant Barenchi's personal participation in a constitutional violation.  Plaintiff alleges only that the diagnosis of Defendant Barenchi, and all other named defendants, is "wrong when speaking about my health problems."  (*Id.* at 4.)  A negligent misdiagnosis cannot, without more, amount to a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 106.

In the absence of personal involvement, Plaintiff must demonstrate that there is a sufficient causal connection between Defendant Barenchi's conduct and a constitutional violation.  *See Crowley*, 734 F.3d at 977.  Plaintiff fails to do so.  Plaintiff's allegations against Defendant Barenchi in his supervisory capacity are unclear, but the Court construes them as a claim that Defendant Barenchi oversaw, or directed his subordinates to commit, a constitutional violation, resulting in Plaintiff's ongoing pain.  (*See* ECF No. 1 at 2.)  This claim fails for two reasons.  First, Plaintiff does not identify what constitutional violation was committed.  In the absence of an alleged underlying constitutional violation, Plaintiff cannot allege a sufficient causal connection between Defendant Barenchi's conduct and a

constitutional violation committed by one of his subordinates. *See Hallman v. Cate*, 483 F. App'x 381, 381 (9th Cir. 2012); *Roman v. Knowles*, 07-cv-1343 JLS (POR), 2009 WL 1675863, at *4 (S.D. Cal. June 15, 2009). Second, Plaintiff fails to allege facts that establish a causal connection between any conduct of Defendant Barenchi and any constitutional violations committed Defendant Barenchi's subordinates.

To the extent Plaintiff alleges that Defendant Barenchi's denial of his appeal amounted to a constitutional violation, in reliance on the Ninth Circuit's holding in *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), this Court has consistently held that a prison official's mere administrative review of a prisoner's health care appeal cannot serve as the basis of the official's liability under § 1983. *See Bell v. Cal. Dep't of Corr. & Rehab.*, No. 14-cv-1397-BEN-PCL, 2016 WL 8736865, at *7 (S.D. Cal. Mar. 29, 2016); *Esposito v. Khatri*, 08-cv-742-H-WMC, 2009 WL 702218, at *12 (S.D. Cal. Mar. 16, 2009); *accord Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (dismissing § 1983 claims against several prison officials whose only alleged misconduct involved the denial of the inmate's administrative grievances and holding that "the denial of administrative grievances or the failure to act" cannot be the basis of liability under § 1983); *Wright v. Shapirshteyn*, CV 1-06-0927-MHM, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009) ("[W]here a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983."). Here, Plaintiff does not plead any facts that would allow the Court to reasonably infer that Defendant Barenchi acted with deliberate indifference when he denied Plaintiff's appeal. For these reasons, Plaintiff's complaint fails to state an Eighth Amendment claim against Defendant Barenchi.

### 4. Additional Claims

Plaintiff also alleges that Defendants prescribed him blood pressure medication that caused him to experience dizziness and nausea and failed to provide him with medical

supplies. (ECF No. 1 at 4.) For the reasons stated below, these allegations fail to state a claim against any Defendant.

Plaintiff alleges that on one occasion he asked for an increase in pain medication and Defendants Chau and/or Clayton instead increased his blood pressure medication, which caused Plaintiff to experience dizziness and feel as if he was "about to throw up all the time." (*Id*.) Plaintiff fails to state a claim of deliberate indifference for several reasons. First, Plaintiff fails to identify which defendant(s) took the allegedly wrongful action of prescribing him the blood pressure medication. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Second, the complaint fails to allege that any defendant acted with deliberate indifference when prescribing the blood pressure medication. *See Toguchi*, 391 F.3d 1057–58. Even if the prescription of the blood pressure medication amounted to negligence or malpractice, this is insufficient to establish liability under the Eighth Amendment. *Estelle*, 429 U.S. at 106. Lastly, Plaintiff alleges that he experienced a negative reaction to an unspecified blood pressure medication on one occasion. Alleged harm that "is an 'isolated exception' to the defendant's 'overall treatment of the prisoner . . . ordinarily militates against a finding of deliberate indifference.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 105). Accordingly, the complaint fails to state a claim that Defendants Chau or Clayton were deliberately indifferent when one or both of them prescribed Plaintiff blood pressure medication.

Plaintiff's allegation that Defendants acted with deliberate indifference when they failed to provide him with medical supplies also fails to state a claim. Plaintiff alleges that he asked "for medical supplies, in which doctors Chau and Clayton aggreed [sic] to, then never write the order . . ." (ECF No. 1 at 4.) Plaintiff fails to identify what "medical supplies" he requested, whether Defendants Chau or Clayton acted with deliberate indifference when they did not order the medical supplies, or what harm, if any, Plaintiff

experienced as a result.  Plaintiff's vague allegation is insufficient to state a claim of deliberate indifference.  *See Iqbal*, 556 U.S. at 678.

## IV.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** on the basis that Plaintiff failed to exhaust his administrative remedies.  In the alternative, in the event that the District Court declines to adopt the above recommendation, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED in part and DENIED in part** as follows: Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's claims that (1) Defendant Walker acted with deliberate indifference when he denied Plaintiff's request to be designated as a full-time wheelchair user, and (2) Defendant Strayhorn acted with deliberate indifference when he interfered with treatment of Plaintiff's serious medical needs; and Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's remaining claims against all Defendants, but grant Plaintiff leave to amend.

**IT IS ORDERED** that no later than **July 2, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 12, 2018**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  June 4, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge